# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

|                                    |   |                        |
|------------------------------------|---|------------------------|
| **FUNDAMENTAL ADMIN. SERVS., LLC,** | * |                        |
| Plaintiff                          | * |                        |
| v.                                 | * | **CIVIL NO. JKB-13-1708** |
| **KRISTI ANDERSON,**               | * |                        |
| Defendant                          | * |                        |

\* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

Pending before the Court is Defendant Kristi Anderson's motion for sanctions, including reimbursement of Anderson for her time and payment of attorney's fees incurred in her defense of Plaintiff's complaint and motion for temporary restraining order, disqualification of Plaintiff's counsel, and dismissal with prejudice of the instant case. (ECF No. 16.) The motion is brought by Anderson, who formerly served as general counsel to Plaintiff Fundamental Administrative Services, LLC ("FAS"), against FAS; Linda S. Woolf, Esq., counsel for Plaintiff; Cheryl Zak Lardieri, Esq., co-counsel for Plaintiff; and the law firm of which Ms. Woolf and Ms. Lardieri are members, Goodell DeVries Leach & Dann, LLP. Defendant asserts that FAS deliberately omitted material facts and manipulated the judicial process to gain an advantage in another court. (Def.'s Mot. Sanctions Supp. Mem. 7, ECF No. 16.) Previously, the Court granted a modified version of a temporary restraining order ("TRO") requested by FAS, and then, after being informed of later proceedings in a related bankruptcy case in the Middle District of Florida,

dissolved the TRO and denied preliminary injunctive relief. (ECF Nos. 5, 13, 15.)[1] This memorandum will not recount all of the previous proceedings but incorporates the Court's prior opinions. The Court has carefully considered the submissions of both parties but declines to award sanctions.[2]

The Court first considers Anderson's contention that FAS made deliberate misrepresentations to this Court when it sought injunctive relief. Anderson says that

> FAS concealed from this Court the fact that the Bankruptcy Court conducted numerous hearings, considered dozens of briefs, heard hours of oral argument over many months, and issued detailed discovery orders and lengthy memorandum opinions about confidentiality, privilege and work product issues relevant to the instant proceedings in this Court. FAS also concealed from this Court – not surprisingly – that it lost every battle it waged to prevent disclosure of documents to the Trustee, including twice bringing actions in other jurisdictions.

(Def.'s Supp. Mem. 8.)

Although the Court was not informed of chapter and verse of the bankruptcy proceedings, it certainly was aware that the bankruptcy proceedings and related lawsuits were a very complex affair that is far from its conclusion, and the Court naturally assumed that hearings had occurred, briefs had been filed, and opinions and orders had been issued. The bankruptcy and related proceedings and the instant case are quite different, although some, not all, of the concerns raised by FAS in this Court overlap some of FAS's concerns in the bankruptcy proceeding. From FAS's point of view, it was, and perhaps remains, concerned that Anderson has violated or will

---

[1] The determinative factor for the Court's denial of injunctive relief was not any lack of stated merit, but the availability of an adequate forum for FAS to raise its concerns regarding privilege and confidentiality and the Court's desire not to intrude unnecessarily into the proceedings of that forum.

[2] Plaintiff FAS filed its opposition to the motion (ECF No. 18), to which Anderson filed her reply (ECF No. 21). Anderson mentions in a footnote that attorneys Woolf and Lardieri and their law firm, Goodell DeVries Leach & Dann, LLP, did not file a response to the sanctions motion and, therefore, asserts that Anderson's motion is unopposed by those persons. (Def.'s Reply 1 n.2.) However, the Court notes that the motion was only served on Woolf and Lardieri through the Court's ECF system in their role as counsel for FAS. (Def.'s Mot. 2; Notice of Electronic Filing for ECF No. 16.) It does not appear to have been separately served on Woolf or Lardieri as individuals or on the law firm. In the absence of proper service on these entities, they need not be faulted for not responding separately. Additionally, because all of their respective interests are aligned, one response is sufficient.

violate her ethical and contractual obligations to FAS by exercising control over documents that FAS asserts are the property of FAS and by sharing information she is obligated to hold in confidence. The Court understands that Anderson has said she does not intend to violate her ethical and contractual obligations to FAS, but this is only the other side in a case yet to be resolved on its merits.

In a footnote in her supporting memorandum to the motion for sanctions, Anderson has referred this Court to three orders entered by the bankruptcy court as orders FAS deliberately failed to disclose prior to the TRO hearing:

- An order entered July 12, 2012 ("Omnibus Order Establishing Discovery Procedures and Protocol for the Production of Documents and the Examination of Witnesses")
- An order entered September 12, 2012 ("Order Denying Joint Motion to Vacate Omnibus Order, or in the alternative, for Protective Order (Doc. 275) and Amending Omnibus Order Establishing Discovery Procedures and Protocol for Production of Documents and the Examination of Witnesses (Doc. 216)")
- An order entered October 18, 2012 ("Order Granting Motion for Rule 2004 Examination of and Production of Documents from Law Firms Representing the Debtor or THMI (Doc. 423)")

(Def.'s Supp. Mem. 13 n.11.) The Court has located the first two of these orders in Anderson's exhibits, but has been unable to find the third order in her voluminous filing (850 pages) that is undifferentiated by tabbing and indexing, as required by Local Rule 105.5.[3]

In the July 12 omnibus order, the bankruptcy court ruled on the participation of other parties in the Bankruptcy Rule 2004 examinations noticed by the bankruptcy trustee:

---

[3] Future filings not in compliance with this rule will result in the Court's not considering the exhibits.

3

> 13. The Trustee shall be the only party authorized to demand production of documents or examine witnesses under the terms of this Order. Subject to the Privilege and Confidentiality provisions set forth below, all Rule 2004 examinations may be observed by the Debtor and any creditor or other party-in-interest. Any person observing a Rule 2004 examination, however, may appear only by video conference or by telephone. No in-person appearances by any creditors or other parties-in-interest shall be permitted. Moreover, any party observing an examination may not ask questions, make comments on the record, object, or otherwise participate in any way in the examination, except to note on the record their appearance as an observer.
>
> . . .
>
> 17. All claims or assertions of privilege or confidentiality, and all objections thereto, shall be preserved without further Order of this Court. If any person or entity *from whom the Trustee seeks the production of documents* believes the Trustee's request is directed at privileged or confidential documents, that party or entity shall provide the Trustee with an appropriate privilege log. . . .

(Def.'s Mot. Ex. O at 13-14 (Omnibus Order, pp. 7-8) (emphasis added).)[4] The Court observes that this order only allows an entity from whom the bankruptcy trustee seeks the production of documents to object to production of those documents on privilege or confidentiality grounds; it does not permit anyone else to raise objections to another entity's production of documents.

In the September 12, 2012, order, the bankruptcy court denied the motion to vacate the omnibus order (filed by FAS and related parties and to which Anderson had filed a joinder supporting the motion), but amended the omnibus order in the following pertinent respect:

> 2. (b) Paragraph 13 of the Omnibus Order is amended such that any party named as a Defendant in the Pending Litigation may appear in person and fully participate in the examination, including asking questions, making comments, or raising any objection they may deem necessary on the record.

(*Id.* Ex. O at 21 (Order Amending Omnibus Order, p. 2).) FAS is a "defendant in the pending litigation" and, consequently, is governed by this amendment. The Court notes paragraph 17 of the omnibus order remained unaltered and that the amendment in the September 2012 order does

---

[4] Copies of this order and the September 12, 2012, order were initially provided by FAS to the Court as part of an attachment to an unfiled letter to the Court on June 14, 2013, following the TRO hearing held the same day.

not apply to the production of documents. To the extent that Anderson argues that these orders (the Court does not consider the October 18, 2012, order because it is not before the Court) provide FAS with the full protection FAS was seeking in this Court, that argument is not well founded. Certainly, none is available in the July 2012 order. The September 2012 order granted FAS a right to participate in the Rule 2004 examinations and to make objections to questions, but it did not offer any protection to FAS if any entity other than FAS was one from whom the trustee sought production of FAS documents. And it did not afford FAS the right to instruct a witness not to answer beyond what would have been understood for FAS with an FAS witness. These shortcomings were not really an issue as long as FAS and Anderson were on the same page.

Between the Fall of 2012 when these bankruptcy court orders were entered and June 14, 2013, the date of the TRO hearing in this Court, a period of several months ensued during which Anderson and FAS cooperated at least on an operational level in their defenses in the bankruptcy and related proceedings. This was evident when Anderson was deposed in December of 2012 in Baltimore, Maryland (Anderson resides in the Baltimore metropolitan area, apparently), in connection with the bankruptcy proceeding. It is unknown by the Court if this deposition was considered to be a Rule 2004 examination but it is assumed so. Regardless, it was attended by various attorneys including FAS's Florida bankruptcy counsel, Gregory M. McCoskey, Esq., and Anderson's counsel in this action, Steven N. Leitess, Esq., who also represents Anderson in the bankruptcy and related proceedings. (*Id.* Ex. R.) During Anderson's deposition, attorneys McCoskey and Leitess frequently interposed similar objections to questions and, further, reiterated their prior opposition to any requests for Anderson to produce documents for the reason that any documents in which the bankruptcy trustee would be interested were not Anderson's documents but were FAS's documents; hence, the trustee should request production

of documents from FAS. (*See, e.g.*, Anderson Dep. 47:22—48:8, 57:19-25, 79:24—80:25, 90:2—93:22, Dec. 5, 2012. *See also* Emergency Motion by Non-Party Kristi Anderson for Protective Order (Bkr. ECF No. 348), Case No. 8:11-bk-22258-MGW (M.D. Fla. Sept. 17, 2012), filed as attachment to FAS's complaint in Civ. No. JKB-13-1708 (D. Md. Jun. 12, 2013, ECF No. 1-3.) This level of cooperation did not continue, however.

In April 2013, FAS terminated Anderson's employment, and the two formerly cooperating parties became antagonists. The merits of that termination are not before this Court, but the conflicting feelings of who was right and who was wrong in the employment dispute came to the fore and seem to have colored the steps taken by both parties thereafter. After this dramatic shift in the parties' relationship, a dramatic shift also occurred in the legal landscape. Anderson and the bankruptcy trustee negotiated a settlement that resolved all legal actions brought by the trustee against Anderson, including the adversary proceedings that had originated in bankruptcy court and been transferred to federal district court; these proceedings had been brought against both FAS and Anderson. In exchange for the anticipated dismissal with prejudice of the district court actions and for the release of all claims against her or her counsel that had been or might have been asserted by the debtor or trustee, Anderson agreed

- to withdraw her objections to production of litigation files and other relevant documents responsive to the trustee's discovery request, preserving only her personal attorney-client privilege and that relating to her counsel's work product in connection with her defense of the district court cases, her participation in the bankruptcy case, and her employment matters;
- to appear for a continuation of her Rule 2004 examination;
- to produce any documents in her possession, custody, or control related to (a) the debtor's assets, liabilities, and business, (b) control of the debtor's assets and operations,

(c) potential Chapter 5 causes of action, (d) the interrelationship with other business entities, and (e) the potential need to include other business entities or assets in the Debtor's bankruptcy estate, "as well as any further documents the Trustee may request in the future, subject only to the objections of third parties to such production."

Further, the settlement agreement allowed the trustee to move for and obtain a "bar order" from the bankruptcy court precluding third parties from suing or making any claim against Anderson or her counsel for complying with the anticipated order granting approval of the settlement. Third parties included FAS. Finally, Anderson was permitted to otherwise pursue separate resolution of claims, whether threatened or brought, by third parties, including the debtor's creditors and their attorneys, or other parties in all cases and venues. (Joint Motion to Compromise Controversy with Kristi Anderson (Bkr. ECF No. 876, June 6, 2013), filed as attachment to FAS's complaint (ECF No. 1-6) on June 12, 2013.)

Thus, on June 6, 2013, FAS's former general counsel, who had previously cooperated with FAS in the defense of bankruptcy proceedings and the related lawsuits and who regularly and strenuously asserted privilege and confidentiality objections in tandem with FAS, indicated to the bankruptcy court she was prepared to waive all of those objections except as she could, individually, assert, and to provide documents when earlier she had repeatedly denied having any documents for the reason that any such documents belonged to FAS. At that juncture, no bankruptcy court order, of which the undersigned has been made aware, permitted FAS to instruct a now-hostile, non-employee witness not to answer in a deposition or to object to her or to anyone else's production of FAS documents. Now, perhaps, these rights had been dealt with on a practical level, but they are not enshrined in the two formal court orders to which Anderson has directed this Court's attention. Consequently, it would be a misstatement to say that, in its

7

filings in the instant action on June 12, 2013, FAS omitted material facts about bankruptcy court orders addressing matters of privilege and confidentiality.

In fact, defense counsel represented to this Court at the TRO hearing that FAS did have such rights and that any objection made by FAS, if not resolved by the parties themselves, would have to be ruled upon by the bankruptcy court judge before further testimony or production of documents occurred. The Court took defense counsel at his word and only dissolved the TRO and denied preliminary injunctive relief based upon his representation as to the governing procedure in the bankruptcy and related proceedings. In hindsight, perhaps the better choice for FAS was to have sought an order from the bankruptcy court specifically incorporating that procedure, but this Court recognizes how quickly this turn of events occurred and does not see a basis for sanctions premised upon FAS's choice to seek this Court's help in holding Anderson to her ethical and contractual obligations.[5]

The Court also notes that the instant lawsuit involves more than a request for injunctive relief regarding those obligations. It also includes a request for a declaratory judgment as to FAS's liability to pay Anderson's attorney's fees (Count II) and restitution as to prior payments out of FAS's funds for Anderson's attorney's fees (Count III). These counts are entirely separate from any matter being addressed by the bankruptcy court and involve questions of Maryland law. Thus, the Court will move forward on the second and third counts of the amended complaint and hold in abeyance any proceedings in Count I (for injunctive relief) pending

---

[5] The Court takes pains to emphasize it has not formed a judgment one way or the other as to the merit of FAS's allegations in this regard and does not wish to imply that Anderson has certainly violated her obligations to FAS or ever had the intent to do so. The matter remains an open question to be resolved over time.
    Anderson has also premised her motion for sanctions on an exchange in open court in which FAS's counsel said that FAS had no standing to object to the then-proposed compromise between Anderson and the trustee; Anderson asserts the Court was misled. (Def.'s Supp. Mem. 12.) In fact, the Court was not misled because it never relied upon that statement in fashioning the TRO. The Court specifically excluded from the TRO FAS's request for the Court to prohibit Anderson from entering into the compromise, instead focusing only upon Anderson's ethical and contractual obligations. In short, the Court paid no attention to the statement. The point is moot. As well, the Court is not persuaded that FAS went "judge shopping." (*See* Def.'s Supp. Mem. 23.)

resolution of related matters in the bankruptcy proceeding. To the extent Anderson has relied upon her motion for sanctions with its accompanying request for dismissal with prejudice of the entire case to suffice for her response under Federal Rule of Civil Procedure 12, the Court will grant Anderson the standard response time from the date of this order in which to file her response to the amended complaint.

One final matter must be addressed. In addressing this motion, the Court has had the opportunity to review a body of correspondence between FAS's counsel and Anderson's counsel. Although the Court well understands that legal proceedings often engender visceral reactions between opposing parties, it is nevertheless the expectation by this Court that members of the Court's bar will communicate with each other in a civil and restrained fashion and avoid a descent into name-calling or hurling accusations of misconduct or malicious intent against one another. The Court notes the presence of inappropriate statements in the correspondence between counsel and cautions them to rein in themselves in future communications. As well, counsel should show restraint in the language employed in filings with the Court, unlike some of what has been filed to date. The Court does not wish to refer any member of its bar to its disciplinary committee but will not hesitate to do so should counsel fall short of the Court's expectations. Counsel should govern themselves accordingly.

Accordingly, it is hereby ORDERED:

1. Defendant's motion for sanctions (ECF No. 16) is DENIED.

2. Defendant shall respond to Plaintiff's amended complaint (ECF No. 8) within the time allowed under the Federal Rules of Civil Procedure.

DATED this 22nd day of August, 2013.

BY THE COURT:

/s/
James K. Bredar
United States District Judge