FILED
U.S. DISTRICT COURT
DISTRICT OF MARYLAND

2014 APR 15 P 3: 45

CLERK'S OFFICE
AT BALTIMORE

BY _____ DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |
|---|---|
| FUNDAMENTAL ADMIN. SERVS., LLC, | * |
| Plaintiff | * |
| v. | * CIVIL NO. JKB-13-1708 |
| KRISTI ANDERSON, | * |
| Defendant | * |

## MEMORANDUM AND ORDER

Pending before the Court in this case are several motions, two of which will be addressed in this opinion: Defendant's motion to dismiss the verified amended complaint (ECF No. 27) and Plaintiff's motion for leave to file a verified second amended complaint (ECF No. 34). The motion to dismiss has been briefed (ECF Nos. 33 & 48), and the motion to amend is unopposed. No hearing is necessary. The motion to dismiss will be denied, and the motion to amend will be granted.

*I. Background*

This case began on June 12, 2013, with a complaint filed by Fundamental Administrative Services, LLC ("FAS"), against Kristi Anderson, who formerly served as general counsel to FAS and whose employment there was terminated April 12, 2013. (Compl., ECF No. 1.) FAS's amended complaint includes the same causes of action as the original complaint: Count I, a request for injunctive relief to prevent Anderson (1) from violating her ethical obligation as a member of the Maryland Bar to protect her client's confidences learned during her employment as counsel for FAS, (2) from violating nondisclosure requirements of joint defense agreements

between Anderson and FAS, and (3) from turning over documents that belonged to FAS; Count II, a request for declaratory judgment that FAS was not obligated to provide Anderson with reimbursement for her legal fees and costs occasioned by her involvement in the bankruptcy court proceeding in the Middle District of Florida for Fundamental Long Term Care, Inc., and the adversary proceedings stemming from the bankruptcy case; and Count III, a claim for restitution of $400,000, which FAS alleges Anderson received as unjust enrichment when, while still employed by FAS, she approved payment of that amount to Steven Leitess, Esq., for fees and costs incurred as her counsel in the bankruptcy and related adversary proceedings. (Am. Compl., ECF No. 13.)

Initially, the Court granted a temporary restraining order ("TRO") but, after a hearing, dissolved the TRO and denied FAS's request for preliminary injunctive relief. (ECF Nos. 5, 13.) The Court denied preliminary injunctive relief because FAS's concern appeared to be focused on the bankruptcy and related proceedings in the federal court in Florida and because of the availability of that forum to address FAS's issues as to privilege and confidentiality. (Order, June 24, 2013, at 2.) Later, the Court denied Anderson's motion for sanctions and directed her to respond to FAS's amended complaint. (ECF No. 24.) Anderson responded with the pending motion to dismiss the amended complaint. Shortly afterward, FAS filed the pending motion for leave to file a second amended complaint.

Between the filing of Anderson's motion to dismiss and the filing of FAS's motion to amend, FAS filed an emergency motion for TRO and preliminary injunctive relief because of a new development, i.e., Anderson's filing of a complaint in Maryland state court against FAS and other defendants; FAS contended that the complaint revealed FAS's privileged and confidential information. (Pl.'s Emerg. Mot., ECF No. 28.) The Court agreed and issued another TRO and,

after holding an in-court hearing, issued a preliminary injunction against Anderson. (ECF Nos. 32, 41.) The Court noted that its original, exclusive focus on the Florida bankruptcy proceedings had been too narrow and that the Court had never intended, by denying preliminary injunctive relief, to grant Anderson license to reveal FAS's privileged and confidential information outside of the bankruptcy proceedings. (Order, Sept. 27, 2013, at 2, ECF No. 32.) FAS's request for relief was broader than the events occurring in the bankruptcy court, and the preliminary injunction recognized that. Even so, the undersigned has assiduously sought to maintain comity with other courts by not asserting any exclusive prerogative by this Court to determine all matters relating to the issue of FAS's privileges and confidential information. Instead, the preliminary injunction recognizes the jurisdiction of other courts to determine such issues when required in the context of proceedings before them.

Anderson's motion to dismiss seeks dismissal of Count I on the ground of mootness and dismissal of Counts II and III for failure to state a claim for relief. Clearly, the Court's issuance of the preliminary injunction refutes the mootness argument. As earlier noted, although the Court at first perceived FAS's complaint as focused only on the bankruptcy proceeding, that focus, in hindsight, unnecessarily precluded FAS's request for injunctive relief outside the confines of the bankruptcy and related proceedings. Count I is not moot. The remaining arguments in the motion to dismiss are now considered.

## *II. Standard of Dismissal for Failure to State a Claim*

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

3

defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. An inference of a mere possibility of misconduct is not sufficient to support a plausible claim. *Id.* at 679. As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level." 550 U.S. at 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . . Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557). Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations. *Twombly*, 550 U.S. at 555.

## III. Analysis

Preliminarily, the Court notes FAS's unopposed motion for leave to file a second amended complaint is meritorious. The second amended complaint, once filed, will supersede the amended complaint and will technically moot Anderson's motion to dismiss. However, because the counts to which Anderson objects are included in the second amended complaint, and because the Court believes it is highly likely Anderson will file another motion to dismiss including the same arguments she now makes, it is expedient to address her arguments now as to Counts II and III in the amended complaint. By so doing, the Court does not foreclose Anderson from raising any other arguments as to the second amended complaint.

Counts II and III are intertwined. Count II seeks a declaratory judgment that FAS is not required to indemnify Anderson for her legal expenses in connection with the Florida proceedings, and Count III seeks repayment by Anderson of an advance of legal expenses to Anderson's counsel.

4

Anderson argues that she is clearly entitled to be indemnified for the costs and fees associated with her representation in the bankruptcy and related litigation. (Def.'s Mot. Dismiss Supp. Mem. 10.) Her argument implies that her Executive Employment Agreement ("EEA") with FAS superseded the FAS LLC Agreement and, therefore, FAS's allegation that she was required to comply with the LLC Agreement in order to be indemnified for her legal expenses fails as a matter of law. The EEA was attached to Anderson's response to FAS's first motion for TRO and preliminary injunction (Def.'s Opp'n Ex. 11, ECF No. 9-12), and the LLC Agreement was attached to Anderson's motion to dismiss (Def.'s Mot. Dismiss Ex. 1). Both agreements are relied upon by FAS in its complaint for relief and their authenticity has not been challenged. Accordingly, the Court will consider them on this motion to dismiss. *See Am. Chiropractic Ass'n v. Trigon Healthcare, Inc.*, 367 F.3d 212, 234 (4th Cir. 2004).

The EEA's relevant section on indemnification is Section 7. In 7.1, the EEA states in pertinent part, "The Company shall indemnify the Executive to the fullest extent permitted by the Operating Agreement, as in effect on the date hereof. The Company expressly represents, acknowledges and warrants that the Executive is a 'Covered Person,' as that term is defined in the Operating Agreement." Section 7.2 goes on to spell out the kinds of costs and expenses covered by the indemnification agreement and to specify that Anderson has sole discretion to select, retain, and direct independent counsel for covered proceedings. The parties agree that "the Operating Agreement" refers to the LLC Agreement. (Am. Compl. ¶ 36; Def.'s Mot. Dismiss Supp. Mem. 2-7; Pl.'s Opp'n 8.)

The EEA's governing law is that of Maryland as stated in that agreement's Section 13. Maryland utilizes the objective interpretation principle in construing contracts. *John L. Mattingly Const. Co., Inc. v. Hartford Underwriters Ins. Co.*, 999 A.2d 1066, 1074 (Md. 2010).

5

If the contract's language is unambiguous, then the Court gives effect to its plain, ordinary, and usual meaning, taking into consideration the context in which the language is used. *Id.* "Where the contract comprises two or more documents, the documents are to be construed together, harmoniously, so that, to the extent possible, all of the provisions can be given effect." *Rourke v. Amchem Products, Inc.*, 863 A.2d 926, 941 (Md. 2004).

Under the LLC Agreement, the topics of exculpation and indemnification are addressed in part by the following subsections of Section 18:

> (a) No Member, Director or Officer (collectively, the "Covered Persons") shall be liable to the Company or any other Person who has an interest in or claim against the Company for any loss, damage or claim incurred by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that a Covered Person shall be liable for any such loss, damage or claim incurred by reason of such Covered Person's gross negligence or willful misconduct.
>
> (b) To the fullest extent permitted by applicable law, a Covered Person shall be entitled to indemnification from the Company for any loss, damage or claim incurred by such Covered Person by reason of any act or omission performed or omitted by such Covered Person in good faith on behalf of the Company and in a manner reasonably believed to be within the scope of the authority conferred on such Covered Person by this Agreement, except that no Covered Person shall be entitled to be indemnified in respect of any loss, damage or claim incurred by such Covered Person by reason of such Covered Person's gross negligence or willful misconduct with respect to such acts or omissions; provided, however, that any indemnity under this Section 18 by the Company shall be provided out of and to the extent of Company assets only, and the Member shall not have personal liability on account thereof. The Company may, to the extent authorized from time to time by the Board and the Member, grant indemnification rights to other employees and agents of the Company and to employees, representatives, agents and Affiliates of the Member to the extent permitted by law.
>
> (c) To the fullest extent permitted by applicable law, expenses (including legal fees) incurred by a Covered Person defending any claim, demand, action, suit or proceeding shall, from time to time, be advanced by the Company prior to the final disposition of such claim, demand, action, suit or proceeding upon receipt by the Company of an undertaking by or on behalf of the Covered Person

to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified as authorized in this Section 18.

In subsection *b*, indemnification is limited to damage resulting from an act or omission performed or omitted in good faith by a Covered Person on behalf of FAS and in a manner reasonably believed to be within the scope of the Covered Person's authority, except that a Covered Person is not entitled to indemnification for damage incurred by that Covered Person by reason of the Covered Person's gross negligence or willful misconduct. In subsection *c*, a Covered Person is entitled to receive an advance by FAS for expenses incurred in defending a claim, suit, etc., prior to final disposition "upon receipt by the Company of an undertaking by or on behalf of the Covered Person to repay such amount if it shall be determined that the Covered Person is not entitled to be indemnified . . . ."

According to the complaint, Anderson, while she was FAS's general counsel, approved an advance payment of $400,000[1] to Leitess for legal fees to defend her in the bankruptcy and related proceedings. (Am. Compl. ¶ 5.) Anderson refused to execute the undertaking proffered by FAS. (*Id.* ¶ 38.) The proceedings in Florida had not been concluded at the time this advance was made. (*Id.* ¶¶ 44-50.)

Anderson makes two arguments. The first is that, because she has been dismissed with prejudice from the Florida litigation after reaching a settlement with the bankruptcy trustee and, "[t]herefore, she was not found to have committed gross negligence or willful misconduct" (Def.'s Mot. Dismiss Supp. Mem. 10), she is entitled to indemnification under either the EEA or the LLC Agreement or both. She cites no authority for the proposition that a settlement resulting in a dismissal with prejudice in a proceeding that never considered the meaning of either of these agreements, or her conduct in relation thereto, forecloses FAS's allegations that she failed to

---

[1] In the proposed second amended complaint, this amount is alleged to be $500,000.

7

meet the criteria for indemnification under the agreements. Her argument is premised upon a conclusion not justified by the underlying disposition.

Anderson's second argument is that the EEA "*requires* FAS to advance legal fees to [her] without the requirement for an undertaking." (*Id.*) Her argument contradicts the plain meaning of the EEA. It clearly states that she is entitled to indemnification "to the fullest extent permitted by the Operating Agreement." (EEA Section 7.1.) This means that indemnification under the EEA is subject to fulfillment of the terms of the LLC Agreement. And an advance is only authorized under the LLC Agreement when FAS has received an undertaking as specified in Section 18.c. In Anderson's reply, she makes a nonsensical argument that the proviso of Section 7.1 has no application to Section 7.2. (Def.'s Reply 4-5.) She fails to explain why a court should compartmentalize the various provisions of an agreement. Her assertion flies in the face of a well-accepted tenet of contract interpretation, and that is that all parts of a contract should be read so that all have meaning in harmony with one another if possible. *Owens-Illinois, Inc. v. Cook*, 872 A.2d 969, 985-86 (Md. 2005) (court must give "effect to every clause and phrase, so as not to omit an important part of the agreement").

None of Anderson's arguments on the interpretation of the governing agreement persuades the Court that FAS has failed to state a claim with regard to Count II. Anderson makes additional arguments as to Count III. First, she says that FAS's theories of recovery under Counts II and III are substantially identical and that, pursuant to Maryland case law, FAS cannot make a claim for unjust enrichment because the matter is covered by a contract between the parties. (Def.'s Mot. Dismiss Supp. Mem. 11.)

In Maryland, generally, a quasi-contract claim of "unjust enrichment cannot be asserted when an express contract defining the rights and remedies of the parties exists." *County*

*Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.*, 747 A.2d 600, 610 (Md. 2000). That general principle does not apply here. No express contract defines the rights and remedies of FAS to recover money allegedly wrongfully advanced to Anderson's attorney. No cause of action for breach of contract appears to arise from either the EEA or the LLC Agreement to address this claim. In the absence of a contractual right and remedy, FAS has appropriately stated a claim for unjust enrichment. *See Janusz v. Gilliam*, 947 A.2d 560, 567-68 (Md. 2008) (exceptions to rule barring unjust enrichment claim when evidence exists of fraud or bad faith, when breach of contract or mutual rescission of contract has occurred, when rescission is warranted, or when express contract does not fully address subject matter).

Finally, Anderson argues that FAS "voluntarily paid" the $400,000 to Anderson's attorney and, hence, FAS is barred from pursuing this claim. (Def.'s Mot. Dismiss Supp. Mem. 11-12.) The voluntary payment doctrine provides "that, when one voluntarily pays money under a mistake of law, the payor may not ordinarily bring a common law action for the recovery of the money." *Dua v. Comcast Cable of Maryland, Inc.*, 805 A.2d 1061, 1085 (Md. 2002). "Voluntary payments, *when once made with full knowledge of the facts*, cannot be recovered." *Poe's Pleading and Practice*, 6th (Sachs) ed. §119 (1970) (emphasis added), *quoted in Bourgeois v. Live Nation Entertainment, Inc.*, ___ F. Supp. 2d ___, Civ. No. ELH-12-0058, 2014 WL 936841, at *28 (D. Md. Mar. 10, 2014). The allegations are that Anderson herself approved payment of the money to her lawyer and that she did so without submitting the required undertaking to FAS. Characterization of her action as a "voluntary" payment by FAS is inconsistent with the factual allegations, which are more consistent with an inference that Anderson's action was outside the scope of her authority. The voluntary payment doctrine is not a bar to Plaintiff's claim.

## IV. Conclusion

For the foregoing reasons, it is hereby ORDERED:

1. Defendant's motion to dismiss the verified amended complaint (ECF No. 27) is DENIED.

2. Plaintiff's motion for leave to file a verified second amended complaint (ECF No. 34) is GRANTED.

3. The Clerk shall DOCKET Exhibit 1 to Plaintiff's motion (ECF No. 34-2) as the Verified Second Amended Complaint.

DATED this 15 day of April, 2014.

BY THE COURT:

James K. Bredar
United States District Judge