## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

|                                      |       |                          |
|--------------------------------------|-------|--------------------------|
|                                      | *     |                          |
| **FUNDAMENTAL ADMIN. SERVS., LLC,**  | *     |                          |
| **Plaintiff**                        | *     |                          |
| **v.**                               | *     | **CIVIL NO.  JKB-13-1708** |
| **KRISTI ANDERSON,**                 | *     |                          |
| **Defendant**                        | *     |                          |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

### MEMORANDUM  AND  ORDER

The Court now addresses Defendant Kristi Anderson's motion to amend or alter judgment or alternatively for clarification, as to the Court's memorandum and preliminary injunction (ECF No. 45), and Anderson's supplemental motion for the same purpose (ECF No. 63). The motions have been thoroughly briefed by both Anderson and Plaintiff Fundamental Administrative Services, LLC ("FAS") (ECF Nos. 55, 61, 65, 71, 82, 89), and no hearing is required, Local Rule 105.6 (D. Md. 2011). Anderson's motions will be denied, but the Court will *sua sponte* supplement its earlier memorandum and preliminary injunction (ECF No. 41) to address the question of security for the preliminary injunction.

Anderson raises three points in her motions: *First*, she contends the Court did not make the requisite factual findings to support the preliminary injunction; *second*, she argues the injunction fails to identify specifically the conduct or activity prohibited or required; and *third*, she alternatively asks the Court to clarify that the requirement for her to return FAS's documents exempts her retention of copies of FAS's documents. None of her contentions has merit.

The Court has reviewed the transcript of the preliminary injunction hearing and its memorandum and preliminary injunction and finds therein ample factual findings to support the preliminary injunction, and it need not repeat them here. Anderson's contention that any factual finding must be written in the injunction order for it to have legal effect is refuted by the Fourth Circuit's decision in *CIENA Corp. v. Jarrard*, 203 F.3d 312, 321 (4th Cir. 2000) ("the district court's findings of fact and conclusions of law, made on the record, satisfied the Rule 52(a) requirement that such factual findings and legal conclusions be 'set forth'"). Further, the written order, which expressly incorporated its earlier opinions, does contain factual findings.[1] *See id.* ("the court stated its findings 'that CIENA will suffer immediate and irreparable injury unless Defendant is temporarily enjoined as set forth in this Order, and that the balance of hardships favors plaintiff, who is likely to prevail on the merits'").

Although her contention that the injunction was not supported by factual findings is unmeritorious, the Court considers it appropriate to respond to Anderson's other contentions relating to the first issue of factual findings. Anderson asserts, "The Court refused to hear any evidence or testimony on any issue . . . ." (*Id.*) Additionally, she says, "Evidence was offered to, and rejected by, the Court on multiple occasions during the hearing." (Def.'s Reply 10, ECF No. 61.) Neither assertion is true. No evidence or testimony was offered at the hearing. What Anderson's counsel did do was to ask the Court if it wanted to hear from Anderson who could state in her own words why she drafted the state court complaint as she did. (10/9/2013 T. 16, 31, 33, ECF No. 55, Ex. A.) It was clear that her lawyer was asking the Court to hear *argument* from Anderson, not sworn testimony subject to cross-examination. Moreover, the Court's order was not based on why she made the allegations that she did in the state court complaint;

---

[1] Anderson's argument to the contrary, the injunctive order *never* "acknowledged that the facts necessary to explain its ruling, and upon which the injunction was based, *must be set forth in the Memorandum and Opinion.*" (*See* Def.'s Reply 7 (emphasis added).)

regardless of her rationale, the allegations were made in derogation of her ethical duty to maintain FAS's confidences.

Anderson also argues that "many of the alleged disclosures that Plaintiff characterizes as confidential information did not, in fact include confidential information." (Def.'s Mot. Supp. Mem. 5.) The Court found otherwise. The Maryland Rules of Professional Conduct ("MRPC") require an attorney to keep confidential not just "privileged" information but also "information relating to the representation of a client." MRPC 1.6(a). Comment 3 to MRPC 1.6 explains the breadth of that duty and the difference between volunteered disclosure and compelled disclosure:

> The attorney-client privilege and work-product doctrine apply in judicial and other proceedings in which a lawyer may be called as a witness or otherwise required to produce evidence concerning a client. The rule of client-lawyer confidentiality applies in situations other than those where evidence is sought from the lawyer through compulsion of law. The confidentiality rule, for example, applies not only to matters communicated in confidence by the client but also to all information relating to the representation, whatever its source. A lawyer may not disclose such information except as authorized or required by the Maryland Lawyers' Rules of Professional Conduct or other law.

*See also Newman v. Maryland*, 863 A.2d 321, 331-32 (Md. 2004) ("Whereas the attorney-client privilege addresses compelled disclosure of client secrets during judicial proceedings, client confidentiality under Rule 1.6 of the Professional Code relates to the attorney's general duty to maintain the confidentiality of all aspects of a client's representation."); *X Corp. v. Doe*, 805 F. Supp. 1298, 1307-08 (E.D. Va. 1992) (discussing differences between attorney-client privilege and broader ethical duty to preserve client's confidences and secrets), *aff'd, Under Seal v. Under Seal*, 17 F.3d 1435 (4th Cir. 1994) (unpublished). Anderson's counsel failed to recognize the difference between the two when she argued at the hearing that "the only issue present today is whether or not Ms. Anderson violated the attorney-client privilege, and whether or not she should be enjoined from doing so." (10/9//2013 T. 23, 32.)

Anderson also states, "For the Court to enjoin Ms. Anderson from making certain assertions on the basis of an improper disclosure of confidential information, it is necessary for the Court to make a finding of fact that Ms. Anderson has in fact already improperly disclosed confidential information." (Def.'s Mot. Supp. Mem. 6.)   She offers no authority for this proposition, nor is it logical when considered in light of the prevailing standard for preliminary injunctive relief:

> A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest.

*Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).   The *Winter* standard is based not on proof that a defendant has already committed an act sought to be enjoined by the plaintiff but on the likelihood that the defendant will commit the act if not enjoined.   Of course, if the defendant has already engaged in conduct for which the plaintiff is seeking an injunction, then the plaintiff's burden is considerably eased when asserting a likelihood of success on the merits.

Next, Anderson argues that even if it were found that she had "disclosed privileged or confidential information, there would still need to be an analysis and determination as to whether she was permitted to do so under MRPC 1.6(b)(5)." (Def.'s Mot. Supp. Mem. 6.)   The subsection of the rule in question permits a lawyer to "reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client." The Court's findings of fact very clearly stated that her state court complaint went well beyond what was necessary under Maryland's notice-pleading rules to state a claim for relief.   Because the rule's permission to disclose is based upon a reasonable belief, the rule thus indicates it is not

4

Anderson's subjective belief that is at issue but whether such belief is objectively reasonable under the circumstances. *See* MRPC 1.0(j) ("'Reasonable' or 'reasonably' when used in relation to conduct by a lawyer denotes the conduct of a reasonably prudent and competent lawyer.'"); MRPC 1.0(k) ("'Reasonable belief' or 'reasonably believes' when used in reference to a lawyer denotes that the lawyer believes the matter in question and that the circumstances are such that the belief is reasonable."). Anderson's belief that her disclosure of FAS's confidences in her state court complaint was necessary was unreasonable. Even if her belief had been reasonable, which it was not, she still failed to take into account the interpretive guidance of Comment 6 to MRPC 1.6(b) (emphasis added): "If the disclosure will be made in connection with a judicial proceeding, the disclosure *should be made in a manner that limits access to the information to the tribunal or other persons having a need to know it and appropriate protective orders or other arrangements should be sought by the lawyer to the fullest extent practicable*." It is undisputed that Anderson filed her complaint without taking any protective measures whatsoever and that the complaint was only sealed after FAS filed a motion to seal it.

As for the second issue, Anderson contends "the injunction is invalid in that it is not sufficiently specific and fails to identify or define the documents to be returned." (Def.'s Mot. Supp. Mem. 8.) The level of description in the injunctive order is comparable to that in the injunctive order at issue in *CIENA v. Jarrard*, which was deemed acceptable by the Fourth Circuit. 203 F.3d at 321-22. Anderson also claims she is placed "in an impossible 'catch 22' position," indicating the injunction prevents her from presenting a document to the state court for a ruling on confidentiality. (*Id.* 6-7.) Nonsense. This is precisely what the injunction allows. Furthermore, the Court explained at the hearing what it intended to do in this regard, and Anderson's counsel did not object to the prospect of presenting issues of confidential or

5

privileged information to the state court before the information is disclosed. (10/9/2013 T. 36-37.)

As to the third issue, Anderson claims "the Court did not hear oral argument with regard to the issue of the documents allegedly in Ms. Anderson's possession." (Def.'s Mot. Supp. Mem. 8.) None was offered. Anderson's counsel made a full presentation to the Court but did not address the issue of documents even though that issue was raised by FAS in its motion papers. Her assertion that the injunctive order was issued without any factual findings with regard to the return of documents is premised upon what she views as a lack of facts establishing that she, in fact, had documents to be returned. (*Id.* 7.) It is undisputed, however, that Anderson and her lawyer had and continue to have FAS documents. That concession was made at the hearing on the first request for a temporary restraining order ("TRO") (6/14/2013 T. 6-10, ECF No. 55, Ex. B) and has been fortified by her subsequent filings acknowledging her possession of thousands of pages of documents (Def.'s Reply 10; Def.'s Supp. Reply 1). No factual finding is necessary in light of her concession.

Anderson argues "the Court's Order does not indicate or make clear whether Ms. Anderson, as an attorney, is entitled to retain copies of any of the documents that are to be produced." She suggests she "is entitled to maintain a copy of all client files upon turning over originals to the client, in accordance with applicable case law in this circuit." (Def.'s Mot. Supp. Mem. 8-9.) The mandate of the injunction order is clear: Anderson "SHALL RETURN to FAS any document, whether in electronic or paper form . . . ." (10/10/2013 Order, ¶ 5.) The order provides no carve-out for copies. The Court has found no binding case law in this Circuit regarding an attorney's keeping a copy of client files, particularly when the attorney was

6

in-house counsel of the client and, therefore, an employee of the client.[2]  MRPC 1.16(d) mandates that an attorney shall surrender papers and property to which the client is entitled.  The documents Anderson admits to having are documents she "collected and retained . . . in anticipation of litigation" (Def.'s Supp. Mot. Supp. Mem. 10), "that she identified, selected, and culled out as part of her efforts to protect herself in the Florida litigation and in anticipation of litigation with Plaintiff FAS" (*id.* 3), and that were "not created by Ms. Anderson, but, rather, merely collected from a defined universe of documents in FAS' possession to which Ms. Anderson had access at the time they were collected, in anticipation of litigation with FAS" (Def.'s Supp. Reply 13).  The only exception to MRPC 1.16(d) is stated therein: "The lawyer may retain papers relating to the client to the extent permitted by other law."  Comment 9 to MRPC 1.16 provides relevant interpretation: "The lawyer may retain papers as security for a fee only to the extent permitted by law, subject to the limitations in paragraph (d) of this Rule.  See Rule 1.15."  Anderson is not retaining FAS's documents as security for a fee but to gain an advantage in litigation.

Maryland cases have uniformly found that an attorney's failure to return a client's file to a client upon termination of representation constitutes a violation of MRPC 1.16(d).  *See Atty. Grievance Comm'n v. Edib,* 4 A.3d 957, 969 (Md. 2010).  *See also Atty. Grievance Comm'n v. Zimmerman.* 50 A.3d 1205, 1218 (Md. 2012) (attorney still required to return client file even if it merely contained copies of documents former client already had).  *But see Atty. Grievance Comm'n v. Brown,* 44 A.3d 344, 359 (Md. 2012) ("When a client requests his or her file from an attorney at the end of the representation, MLRPC 1.16(d) requires the attorney to surrender the

---

[2]  The Court acknowledges the possibility of a different conclusion if the attorney is outside counsel and has, in the ordinary course of representation of the client, amassed a file of documents that were either voluntarily supplied by the client, created by the attorney, or received from opposing parties or witnesses in the process of discovery and litigation.  The Court is not faced with that quite different factual scenario and does not opine beyond the circumstances actually before it.

7

portions of the file (or a copy) to which the client is entitled (assuming no proper charging lien exists)."). The only Maryland cases that have been found on this issue have dealt with outside counsel. The Court has been unable to find any Maryland cases discussing the same issue in relation to former in-house counsel. As earlier noted, Anderson was an employee of FAS when she was working as FAS's general counsel. It would seem that a client's employee has no independent right to possess the client's documents in the first place; therefore, without prior legitimate possession of client documents, in-house counsel would have nothing to "return" to the client. Despite that logic, Anderson has accumulated thousands of pages of FAS documents and has not surrendered them to FAS, although she says she has provided copies to FAS. (Addressed later in this opinion is whether she can refuse to provide even copies of some documents.) She relies upon several cases as authority for the proposition that she can make and keep copies of FAS's documents. The Court finds these cases unpersuasive.

Anderson places heavy reliance upon the Utah Supreme Court's decision in *Spratley v. State Farm Mut. Auto. Ins. Co.*, 78 P.3d 603 (Utah 2003), and claims it was "cited with approval" by another judge of this Court in *Hoffman v. Baltimore Police Dep't*, 379 F. Supp. 2d 778 (D. Md. 2005). The *Spratley* case approved in-house counsel's keeping a copy of confidential documents and materials based on Utah's Rule of Professional Conduct 1.16(d). Anderson fails to mention that Utah's Rule 1.16(d) is worded in a materially different manner from Maryland's Rule 1.16(d). Utah's rule states in relevant part: "The lawyer must provide, upon request, the client's file to the client. The lawyer may reproduce and retain copies of the client file at the lawyer's expense." Given that wording, it is not surprising at all that the Utah Supreme Court ruled "the client is entitled to possession of its original client file, but the attorney

is permitted to retain copies at its [*sic*] own expense." 78 P.3d at 611. Maryland's rule has no comparable wording, and the *Spratley* opinion is, consequently, inapplicable to MRPC 1.16(d).

Anderson also states unabashedly that Judge Nickerson's opinion in *Hoffman* approved the *Spratley* case's treatment of the issue of copies being retained by in-house counsel. (Def.'s Mot. Supp. Mem. 9 n.2.) The *Hoffman* opinion only refers to *Spratley* in relation to a different issue, whether and how in-house counsel could, consistent with MRPC 1.6, pursue a retaliation claim against his former employer. 379 F. Supp. 2d at 784. *Hoffman* never addressed the issue of retention of copies of documents.

Anderson additionally relies upon the opinion of *X Corp. v. Doe*, 805 F. Supp. 1298 (E.D. Va. 1992). Although the undersigned agrees with that case's extensive discussion and treatment of an attorney's ethical duty to preserve a client's confidences and secrets, no compelling reason presents itself to adopt the second ruling made in *X Corp. v. Doe* as to an in-house attorney's right to retain copies of a company's documents.[3] Unlike the thorough treatment of the first issue, the second issue was decided with little accompanying analysis and with no reference at all to the ethical duties owed by an attorney to a client upon termination of representation. Instead, the opinion summarily concluded the company was unlikely to suffer irreparable harm if Doe retained X Corporation's document copies for three reasons: (1) the corporation had all of the original documents; (2) the corporation had notice of the subject matter covered by the documents and was reasonably able to identify the documents Doe possessed; and (3) since the court was granting the corporation's request for injunctive relief to prevent Doe from making disclosures of confidential information, the corporation "face[d] no risk that Doe will use or disseminate the documents in any manner detrimental to X Corp., other than in the defense of

---

[3] This issue was not part of Doe's appeal to the Fourth Circuit. *See Under Seal*, 17 F.3d 1435, 1994 WL 52197, at *1.

this case or the prosecution of his personal claims." *Id.* at 1311. Even putting aside the case's lack of discussion of the ethical obligations, this Court has no basis for determining that FAS possesses all of the documents that Anderson possesses or that FAS is reasonably able to identify the documents Anderson possesses. Moreover, the Court is not confident that an injunction prohibiting disclosure by Anderson of FAS's confidences is sufficient to protect FAS from release of FAS documents.

Two other cases cited by Anderson deal with outside counsel's retention of copies of client files, *Sage Realty Corp. v. Proskauer Rose Goetz & Mendelsohn, L.L.P.*, 689 N.E.2d 879 (N.Y. 1997), and *Qualitative Fin. Strategies Inc. v. Morgan Lewis & Bockius, LLP*, 2002 WL 434380 (Pa. Com. Pl. Mar. 12, 2002), and shed no additional light on the circumstances of the instant case. Finally, the case of *Schaefer v. Gen. Elec. Co.*, Civ. No. PCD-07-0858, 2008 WL 649189 (D. Conn. Jan. 22, 2008), only addressed whether a former in-house counsel could retain copies of documents reflecting her personal performance while employed at GE and found such was permissibly implicit in her right to make defensive disclosures of protected information in dispute with her client. Suffice it to say that documents possessed by Anderson—in the thousands of pages—range far beyond any pertaining to her personal performance.

Anderson makes several more arguments. She states,

> The Court's decision with regard to the documents also serves to frustrate the Bankruptcy Proceedings. . . . [T]he Court's injunction would require Ms. Anderson to take action that would render her unable to perform her obligations in discovery in connection with the Bankruptcy Proceedings because she would no longer have possession of materials that are the proper subject of discovery in that case and are covered by the settlement and compromise and/or Bar Order.

Anderson has not shown that she was ever entitled to possess the documents outside the confines of her employment with FAS, and whether she has to give up documents that she was never authorized to possess perhaps should have some bearing on the bankruptcy proceedings. But

however the court in the bankruptcy proceedings resolves the issues before it is not this Court's concern.

Anderson additionally asserts the injunctive order must be clarified as to her entitlement "to invoke attorney-client privilege with regard to communications between herself and her independent counsel, Steven Leitess." (Def.'s Reply 10.) Anderson can provide a privilege log to FAS for those documents that she believes come within her privileged communications with her counsel. The privilege log shall comply with the directives of Rule 45(e)(2)(A), Federal Rules of Civil Procedure, and this Court's Local Rules, Appendix A, Guideline 10.d. *See Neuberger Berman Real Estate Income Fund, Inc. v. Lola Brown Trust No. 1b*, 230 F.R.D. 398, 406 n.14 (D. Md. 2005); *Marens v. Carrabba's Italian Grill, Inc.*, 196 F.R.D. 35, 38-39 & n.1 (D. Md. 2000).

Another contention advanced by Anderson is that she "has her handwritten notes documenting certain communications held with others relating to Plaintiff or tasks to be performed while she was counsel at FAS. Given the breadth of this Court's Order, copies of such personal, handwritten notes were provided to Plaintiff, through counsel; however, it is entirely unreasonable to deprive Ms. Anderson of her own handwritten notes." (Def.'s Reply 11.) From Anderson's description, these handwritten notes appear not to be "personal" documents but FAS documents, *i.e.*, they were recorded by an FAS employee in relation to her FAS employment. Whether they were handwritten or typed or recorded in some other format is not the test of whether they are FAS's documents. Anderson has established no entitlement to these documents.

In her final argument, Anderson claims work-product protection for documents that she characterizes as her "handwritten notes of telephone calls or meetings that were generated and

maintained by her during the course of her employment with and representation of FAS, some of which contain her thoughts and impressions made in anticipation of litigation with the company or its officers," which she refers to as "Protected *Notes*," and "electronically stored documents including emails and attachments to the emails," which she refers to as "Protected *Documents*." (Def.'s Supp. Mot. Supp. Mem. 2-3.) Addressing the latter first, it is clear that the "Protected *Documents*" are FAS documents and this Court has already determined she has no authority to possess them. Anderson unreasonably claims that the "Protected *Documents*" that she "collected and retained" from FAS, but concededly did not "create," are *her* work product. If anyone can claim a right of work product in FAS's documents, then it is clearly FAS. *Resolution Trust Corp. v. H----, P.C.*, 128 F.R.D. 647, 649 (N.D. Tex. 1989) (protection afforded by work-product doctrine is for client's benefit and cannot be used by client's own attorney against client).

Anderson did not generate the "Protected Documents" and, adversely to FAS's interests, she seeks to claim protection for FAS's work product, to the extent the documents constitute work product at all. Anderson's assertion of work-product protection as to documents rightly belonging to FAS turns the traditional order of litigation processes around. She can, in the course of discovery, serve appropriate requests for production on FAS and then the question will become whether FAS is required to produce certain documents to her. *Resolution Trust*, 128 F.R.D. at 649 (if client terminates firm's representation, then "the firm may retrieve those documents it feels are relevant to its defense through discovery"). She cannot subvert the recognized order of a lawsuit's progression by seizing FAS's documents in advance of discovery and asserting squatter's rights to them. And whether FAS also has these documents is irrelevant. If they are FAS's documents, then FAS is solely entitled to determine who may possess them—including copies thereof—unless their disclosure by FAS is compelled through the normal

litigation processes.  As for the "Protected Notes," they may be her work product, but they must also be included in Anderson's privilege log.

For all of the foregoing reasons, Anderson's motions will be denied.  Nevertheless, the Court inadvertently failed in its injunctive order to address the question of security pursuant to Federal Rule of Civil Procedure 65(c), which states in pertinent part:

> The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.

The Fourth Circuit has interpreted this provision to be "mandatory and unambiguous." *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*, 174 F.3d 411, 421 (4th Cir. 1999).  Even so, "[w]here the district court determines that the risk of harm is remote, or that the circumstances otherwise warrant it, the court may fix the amount of the bond accordingly.  In some circumstances, a nominal bond may suffice." *Id.* n.3 (citing *Int'l Controls Corp. v. Vesco*, 490 F.2d 1334 (2d Cir. 1974), which approved a district court's fixing a bond at zero based on absence of evidence regarding likelihood of harm).  In the instant case, the Court can perceive no likelihood of harm to Anderson from compliance with the preliminary injunction.  It only mandates her adherence to the ethical norms to which she is already subject by virtue of her membership in the Maryland Bar.  Consequently, the bond amount is zero.

In conclusion, the Court's Memorandum and Preliminary Injunction of October 10, 2013 (ECF No. 41), is hereby modified to reflect that FAS is not required to post security.  Otherwise, Anderson's motion and supplemental motion to alter, amend, or clarify (ECF Nos. 45, 63) are hereby DENIED.  Anderson shall immediately turn over all documents, whether they are originals or copies, that Anderson retained from her employment with FAS, except for any document relating to her compensation or other benefit.  The Court further excepts from this

13

requirement any performance evaluation Anderson received while employed with FAS.   Any document Anderson believes is protected by her personal attorney-client privilege for her communications with her independent counsel or is protected as her or her attorneys' work product shall be clearly and specifically described in a privilege log pursuant to applicable rules and case law.  The privilege log shall be provided to FAS within ten days of this order.

DATED this ___/___ day of May, 2014.

BY THE COURT:

James K. Bredar
United States District Judge

14