**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **FUNDAMENTAL ADMIN. SERVS., LLC,** | * | |
| **Plaintiff** | * | |
| **v.** | * | **CIVIL NO.  JKB-13-1708** |
| **KRISTI ANDERSON,** | * | |
| **Defendant** | * | |

\* \* \* \* \* \* \* \* \* \* \* \*

**MEMORANDUM**

Pending before the Court are two motions:  (1) Defendant Kristi Anderson's motion to dismiss in part Plaintiff Fundamental Administrative Services, LLC's ("FAS") second amended complaint (ECF No. 93) and (2) the motion by FAS and the third-party defendants for partial dismissal of Anderson's amended counter-complaint and third-party complaint (ECF No. 130). The motions have been briefed (ECF Nos. 107, 112, 143, 146), and no hearing is necessary, Local Rule 105.6 (D. Md. 2014).  Anderson's motion will be granted in part and denied in part. The second motion will be granted.

At the outset, the Court notes that FAS has objected to the consideration of Anderson's motion to dismiss in light of her lack of opposition to FAS's motion for leave to file a second amended complaint; thus, FAS effectively argues that Anderson waived her right to file a motion to dismiss.  (Pl.'s Opp'n 2-3, 8.)  FAS cites no authority for this proposition, and the Court is unaware of any.  The Court finds Anderson did not waive her right to file her motion to dismiss.

Because of the considerable number of memorandum opinions authored in this case, the Court sees no need to repeat what has been said before regarding FAS's allegations or the

procedural history.  As appropriate, the content of those earlier opinions is incorporated into this opinion.

## I.  Standard of Dismissal for Failure to State a Claim

A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.  An inference of a mere possibility of misconduct is not sufficient to support a plausible claim.  *Id.* at 679.  As the *Twombly* opinion stated, "Factual allegations must be enough to raise a right to relief above the speculative level."  550 U.S. at 555.  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' . . .  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).  Although when considering a motion to dismiss a court must accept as true all factual allegations in the complaint, this principle does not apply to legal conclusions couched as factual allegations.  *Twombly*, 550 U.S. at 555.

## II.  Analysis – Anderson's Motion to Dismiss in Part the Second Amended Complaint

### A.  Count I – Injunctive Relief

FAS's first count served as the basis for preliminary injunctive relief earlier in the case. Anderson now claims the count is moot because FAS did not specifically request a permanent injunction.  (Def.'s Mot. Dismiss Supp. Mem. 5.)  However, the prayer for relief also includes "[s]uch other and further relief as this Court deems appropriate."  (2d Am. Compl., p. 17.)  It is at least possible the Court will deem a permanent injunction as to Anderson's ethical obligations

to be appropriate, if this case proceeds to final judgment.   Additionally, the Federal Rules of Civil Procedure expressly state, "Every . . . final judgment [other than a default judgment] should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."   Fed. R. Civ. P. 54(c).   Thus, whether FAS specifically requested a permanent injunction is not determinative of whether Count I continues to present an actual case or controversy.   The Court concludes Count I is not moot and will not be dismissed.

### B.   *Count II – Declaratory Relief*

Anderson argues that Count II "is purely duplicative of" Count V, which seeks a remedy for unjust enrichment.   (Def.'s Mot. Dismiss Supp. Mem. 2.)   Count V focuses entirely upon the allegedly unauthorized transfer of $500,000 of FAS funds to Anderson's outside counsel and seeks recovery of that amount.   On the other hand, Count II seeks a declaration that FAS is not responsible for paying the costs of Anderson's legal representation in the other cases in Florida and elsewhere.   That part of the requested relief is prospective in nature—to forestall any future claims by Anderson for costs of legal representation—and, thus, does not duplicate Count V's request for reimbursement of the $500,000.   Moreover, it is a proper subject for declaratory relief inasmuch as a ruling on the issue would "afford relief from uncertainty and insecurity with respect to rights, status and other legal relations."   *See Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 324 (4th Cir. 1937).   However, then Count II also specifically seeks reimbursement of the same $500,000 payment.   "The object of the [Declaratory Judgment Act of 1934] is to afford a new form of relief *where needed* . . . ."   *Id.* (emphasis added).   Here, it is not necessary to include a claim for reimbursement because that claim is adequately addressed in Count V for unjust enrichment.   To the extent, then, that Count II seeks reimbursement of the $500,000 advance to Anderson's legal counsel, the Court will decline to consider that request except in relation to

Count V.  Nevertheless, Count II otherwise presents a viable claim for declaratory relief and will not be dismissed.

### C.  Count III – Declaratory Relief

In this count, FAS asks the Court to declare that FAS's termination of Anderson's employment was done with cause, that FAS has no obligation to pay Anderson any sum or benefits, that FAS has fully complied with the terms of the employment agreement, and that FAS has no further obligations to Anderson under the employment agreement or any other agreement or law.  Anderson argues that this is an improper invocation of the Declaratory Judgment Act, 28 U.S.C. § 2201.  The Court agrees.

"The Declaratory Judgment Act of 1934 . . . is an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant."  *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952); *Ellis v. Louisiana-Pacific Corp.*, 699 F.3d 778, 788 (4th Cir. 2012).  "[T]his discretion should be liberally exercised to effectuate the purposes of the statute . . . but it should not be exercised for the purpose of trying issues involved in cases already pending, especially where they can be tried with equal facility in such cases, or for the purpose of anticipating the trial of an issue in a court of co-ordinate jurisdiction."  *Quarles*, 92 F.2d at 324.  The Supreme Court has frowned upon a potential defendant in a tort case seeking a declaratory judgment against one who is the potential plaintiff in the tort case:  "[T]he realistic position of the parties is reversed.  The plaintiff is seeking to establish a defense against a cause of action which the declaratory defendant may assert in the [state] courts."  *Wycoff*, 344 U.S. at 246.  *See also Cunningham Bros., Inc. v. Bail*, 407 F.2d 1165, 1167 (7th Cir. 1969), *cited in J.B. Hunt Transp., Inc. v. Innis*, 985 F.2d 553, 1993 WL 13376, at *2 (4th Cir. 1993) (unpublished); *Tucker Materials, Inc. v. SafeSound Acoustics, Inc.*, Civ. No. 12-247-MR-DLH, 2013 WL

4782394, at *8 (W.D.N.C. Sept. 6, 2013); *Dann Marine Towing, LC v. St. Paul Fire & Marine Ins. Co.*, Civ. No. 01-2766-18, 2002 WL 34455167, at *2 (D.S.C. Apr. 23, 2002).

Count III clearly anticipates the trial of a case involving wrongful discharge and breach of employment contract claims by Anderson against FAS, and it effectively asserts affirmative defenses against such claims.  Anderson, in fact, filed a lawsuit including those claims against FAS in Maryland state court, although that case was recently dismissed without prejudice.  Balt. Cnty. Cir. Ct. Case No. 03C13010459 (Dkt. No. 10, Sept. 16, 2014).  Anderson remains free to refile her case in state court.  Also, she has now counterclaimed in this Court for breach of employment contract and wrongful discharge, as well as having filed a third-party claim against individuals at FAS.  Without addressing the merits of her counterclaim or third-party claim, the Court simply notes that all of the matters raised by FAS in Count III may be suitably raised in FAS's defense of the counterclaim.  The Court declines to exercise its discretion to entertain the claim for declaratory relief in Count III.  It will be dismissed.

### D.  Count IV – Breach of Fiduciary Duty

Anderson next contends that Count IV pleads a breach by Anderson of fiduciary duty and that it is not a viable claim because Maryland law does not recognize an independent cause of action for breach of fiduciary duty.  (Def.'s Mot. Dismiss Supp. Mem. 11.)  Although the Maryland Court of Appeals has made clear that no omnibus tort so named exists, a cause of action for breach of fiduciary duty may proceed when a plaintiff identifies the appropriate fiduciary relationship, such as principal and agent or trustee and beneficiary, identifies how the relationship was breached, considers the available remedies, and selects the remedies appropriate to the plaintiff's problem.  *See Kann v. Kann*, 690 A.2d 509, 521 (Md. 1997).

Here, FAS has identified the appropriate fiduciary relationship, *i.e.*, the employment relationship.  Maryland courts have recognized that a corporate officer or an employee has a duty

of "undivided and unselfish loyalty" to the corporation or employer. *Maryland Metals, Inc. v. Metzner*, 382 A.2d 564, 568 (Md. 1978). The Maryland Court of Appeals has "read into every contract of employment an implied duty that an employee act solely for the benefit of his employer in all matters within the scope of employment, avoiding all conflicts between his duty to the employer and his own self-interest." *Id.* (citing *inter alia Cumb. Coal & Iron Co. v. Parish*, 42 Md. 598, 605-06 (1875) (recognizing similar duty as to corporate directors and officers)). The misuse of confidential information can constitute a breach of fiduciary duty. *Dworkin v. Blumenthal*, 551 A.2d 947, 949 (Md. Ct. Spec. App. 1989).

FAS has alleged that Anderson misused FAS's confidential information, among other alleged breaches of duty, which include her authorization of the $500,000 payment to her attorney and failing to fulfill her job duties. Thus, FAS has adequately alleged a breach of Anderson's duty of loyalty to FAS and has further alleged it suffered damages because of her breach. Count IV properly states a claim for relief and will not be dismissed.

### E. Count VI – Replevin

Anderson's last argument is that Count VI, which seeks the return of FAS's documents as well as damages for their wrongful taking and detention, is duplicative of Count I, and since, she argues, Count I is moot, Count VI is also moot. (Def.'s Mot. Dismiss Supp. Mem. 12.) The Court is not persuaded that Count VI is either duplicative or moot.

Replevin, having existed for centuries, is still a valid cause of action in Maryland. "In a replevin action, a party seeks basically to recover specific goods and chattels to which he or she asserts an entitlement to possession." *Dehn Motor Sales, LLC v. Schultz*, 96 A.3d 221, 237 (Md. 2014). Even so, an action for replevin can also seek damages for wrongful detention of the property at issue. *Wallander v. Barnes*, 671 A.2d 962, 971 (Md. 1996). FAS has sought such damages here. Yet, if "the property cannot be seized before trial on the merits, the action is no

longer replevin.  Under those circumstances, . . . the plaintiff properly should amend to [state a cause of action for] detinue."  *Id.*   To the extent that the label of "replevin" no longer properly reflects the available cause of action, the Court will consider Count VI to have also been brought under the theory of detinue.  Further, even if this count seeks the same relief as another count, it is permissible under the Federal Rules of Civil Procedure to plead in the alternative.  Fed. R. Civ. P. 8(d).   And to the extent that FAS contends Anderson still wrongfully possesses FAS's documents, that portion of the claim is not moot.  Count VI will not be dismissed.

### III.  Analysis – Motion for Partial Dismissal of Counterclaim and Third-Party Complaint

Because Anderson has not pleaded her third-party claims separately from her counterclaims but has joined them into one document, the Court will address the joint motion to dismiss by individual counts, sequentially.  In this portion of the Court's opinion, FAS and the third-party defendants will be referred to collectively as "Movants," except where necessary to discuss specific parties.  The third-party defendants are Mark Fulchino, Kenneth Tabler, and Christine Zack.  Fulchino is the chief executive officer of FAS and one of its two board members.  (Am. Counter-complaint ¶ 3, ECF No. 125.)  Tabler is FAS's vice president of finance, a member of the company's risk management team, and the other member of FAS's board of directors.  (*Id.* ¶ 4.)  Zack is FAS's chief risk officer and head of its risk management department.  (*Id.* ¶ 5.)

#### A.  Count I – Demand for Punitive Damages on Breach-of-Contract Claim

This claim is only against FAS and concerns FAS's alleged breach of the Executive Employment Agreement ("EEA").  FAS has not contested the plausibility of this claim under Rule 12(b)(6), but has sought dismissal of Anderson's inclusion of a prayer for punitive damages thereunder.  "[W]here actual malice is shown, punitive damages may be awarded in a tort action

but not in an action for breach of contract." *Jacques v. First Nat. Bank of Md.*, 515 A.2d 756, 765 (Md. 1986).  Anderson fails to present any responsive argument on this point.  The portion of her Count I requesting punitive damages for breach of contract will be dismissed.

### B.  Count II – Tortious Interference with Economic Relationships

This claim is against all Movants and asserts that their actions tortiously interfered in Anderson's employment relationship with FAS and her relationship with the insurance carrier that issued the professional liability policy under which she claims entitlement to benefits as an FAS in-house attorney.  She also makes what seems to be a misdirected allegation that Movants interfered with an unidentified economic relationship when they filed this case seeking a temporary restraining order against her.  The Court will regard this as excess verbiage since she has not made a claim of malicious use of process in this amended counterclaim and third-party complaint.[1]

It is well established in Maryland that a party to a contract cannot be sued for tortiously interfering with the contract.  *See Blondell v. Littlepage*, 991 A.2d 80, 97-98 (Md. 2010).  Thus, FAS must be dismissed from Count II since it was a party to both the EEA and the insurance policy.  In addition, this same infirmity of cause of action applies to agents of the party to a contract when they are acting within the scope of their agency.  *See Bagwell v. Peninsula Regional Med. Ctr.*, 665 A.2d 297, 313 (Md. Ct. Spec. App. 1995) (plaintiff did not allege supervisors were acting outside scope of their employment; no tortious interference claim permitted against supervisors).  The other Movants named in this count are FAS's chief executive officer, FAS's vice president of finance, and FAS's chief risk officer.  (Am. Counter-complaint ¶¶ 3-5, ECF No. 125.)  Thus, they must be dismissed from Count II if they

---

[1] The Court notes Anderson included a malicious-use-of-process claim in her original counterclaim and third-party complaint (ECF No. 95-1), but did not include it in the amended version (ECF No. 125).

were acting within the scope of their employment.   Anderson has not pleaded any factual allegations to permit the Court to conclude that they were not so acting either as to the EEA or the insurance policy.   Consequently, all of Count II will be dismissed.

### C. Count III – Wrongful Discharge

This count is only against FAS and alleges the termination of Anderson's employment with FAS violated public policy.   The "public policy" to which she alludes is the subject of vague allegations.   Anderson claims "Zack committed certain illegal and unethical acts within the scope of her employment."   (Am. Counter-complaint ¶ 219.)   Further, she "informed defendant Fulchino of ethical obligations she may have to report certain conduct by defendant Zack and outside counsel, at the appropriate time, to the Maryland Bar, the District of Columbia Bar and possibly the Virginia Bar."   (*Id.* ¶ 221.)   Anderson also alleges that FAS's intent was to "prevent her from exercising her legal rights and obligations, and prevent her from discharging her ethical obligations" to the three named state bars (*id.* ¶ 223) and "to prevent her from exercising her legal rights and obligations" in the Florida bankruptcy case (*id.* ¶ 227).

The Court is unable to infer that FAS's termination of Anderson's employment actually prevented her from reporting others' unidentified conduct to any state bar or prevented her from exercising unspecified rights and obligations in the bankruptcy case.   "To establish wrongful discharge, the employee must be discharged, the basis for the employee's discharge must violate some clear mandate of public policy, and there must be a nexus between the employee's conduct and the employer's decision to fire the employee."   *Wholey v. Sears Roebuck*, 803 A.2d 482, 489 (Md. 2002).   Here, Anderson's exercise of whatever obligations she then had as an attorney or litigant remained inchoate at the time of her termination.   Thus, no conduct by her, to the extent it was protected by public policy, has been linked to her discharge.   *See Wholey*, 803 A.2d at 494 (civil cause of action in wrongful discharge recognized for employees discharged for reporting

suspected criminal activity to appropriate authorities based on clearly defined public policy protecting witnesses in that context).  Merely investigating suspected wrongdoing and discussing the investigation with co-employees or supervisors does not suffice as protectable conduct.  *Id.* at 496 (employee must report to law enforcement or judicial officials to come within public policy exception to tort of wrongful discharge).  *See also Adler v. Am. Std. Corp.*, 432 A.2d 464, 472 (Md. Ct. Spec. App. 1981) ("The bald allegations of Adler's complaint [did] not provide a sufficient factual predicate for determining whether any declared mandate of public policy was violated").  Anderson's factual allegations do not allow an inference that she was terminated because of conduct protected by clear public policy, do not rise above speculation, and do not state a plausible claim for relief.

### D.  Count IV – Civil Conspiracy

This count is against all Movants.  Its viability depends upon viable counts of tortious, substantive conduct.  The Maryland Court of Appeals "has consistently held that conspiracy is not a separate tort capable of independently sustaining an award of damages in the absence of other tortious injury to the plaintiff."  *Lloyd v. Gen. Motors Corp.*, 916 A.2d 257, 284 (Md. 2007) (internal quotation marks omitted).  Thus, "[t]he tort of civil conspiracy 'lies in the act causing the harm; the agreement to commit the act is not actionable on its own but rather is in the nature of an aggravating factor.'"  *Shenker v. Laureate Educ., Inc.*, 983 A.2d 408, 428 (Md. 2009) (quoting *Hoffman v. Stamper*, 867 A.2d 276, 290 (Md. 2005)).  Because Anderson has inadequately pled the underlying counts of tortious interference with economic relationships and wrongful discharge, her count for civil conspiracy based on those torts is similarly insufficient.[2]

---

[2] Anderson includes as bases for civil conspiracy Movants' alleged tortious interference with her economic interests and malicious use of process.  However, the Court has not discerned from Anderson's pleading a separate tort of tortious interference with "economic interests," different from her alleged claim of tortious interference with economic relationships.  Similarly, she has not pleaded a count of malicious use of process, so her indirect reference to that tort as a basis for civil conspiracy is immaterial.

### E.  Count V – Aiding and Abetting

This count is against the individual Movants:  Fulchino, Zack, and Tabler.  It is deficient for the same reasons Count IV is deficient.  The civil tort of aiding and abetting depends upon an underlying tort.  *See Alleco Inc. v. Harry & Jeanette Weinberg Foundation, Inc.*, 665 A.2d 1038, 1050 (Md. Ct. Spec. App. 1995) ("civil aider and abettor liability, somewhat like civil conspiracy, requires that there exist underlying tortious activity in order for the alleged aider and abettor to be held liable").  Since Anderson premises this count on the same inadequate allegations of tortious interference with economic relationships and wrongful discharge, it, too, must fail.

### F.  Count VI – Invasion of Privacy – Appropriation of Name or Likeness

Anderson's allegations in this count border on, if not indeed constitute, frivolousness.  She claims that her work email address at FAS remained active after her termination and that FAS employees read messages sent to the address.  Apparently because her name was part of her email address, she claims that continued operation of the email account—which Anderson clearly was provided by FAS for employment purposes—amounted to an appropriation of her "likeness."

The tort of invasion of privacy by misappropriation of name or likeness "is intended to protect against a person using the identity of another to advertise his business or for other commercial purposes," *Barnhart v. Paisano Publications, LLC*, 457 F. Supp. 2d 590, 595 (D. Md. 2006), but "a person's name or likeness must have 'commercial or other value' before an appropriation is actionable," *Lawrence v. A.S. Abell Co.*, 475 A.2d 448, 453 (Md. 1984) (citing *Restatement (Second) of Torts*, § 652C, comment *d*).  Anderson has failed to allege, plausibly, that her name had "commercial or other value" in relation to FAS's monitoring of messages coming into the email account after her departure.  This count is without merit.

### G.  Count VII – Fraud and Deceit

Anderson's premise for this count is that Fulchino committed an act of fraud and deceit when he represented to her that he had authority to execute the EEA on behalf of FAS and that, *if he did not have that authority*, then she was defrauded because she relied on his representation to enter into what she believed to be a valid and binding obligation on FAS.  At the same time that Movants filed their motion to dismiss, FAS filed its answer to Anderson's Count I (breach of employment contract).  Therein, FAS admitted, "The Employment Agreement is a valid [and] binding agreement between defendant FAS and Ms. Anderson."  (FAS Ans. ¶ 204, ECF No. 132.)  FAS's answer is a judicial admission on this point.  Because Count VII only succeeds if (1) Anderson relied on a misrepresentation of the EEA's validity and (2) the EEA was actually invalid, this count fails.

### H.  Count VIII – Negligent Misrepresentation

This count is based on the same allegations as Anderson's preceding fraud-and-deceit count.  It is similarly without merit and will be dismissed.

### I.  Count IX – Defamation against Zack

Anderson alleges that Zack defamed her when she made the following allegedly false statements:

- To Fulchino, "among others, . . . that Ms. Anderson was meeting with the FLTCI Trustee and/or her counsel and/or representatives for the claimants in the Wilkes Litigation in order to negotiate an agreement that would benefit Ms. Anderson but harm defendant FAS."

- To unidentified "outside counsel that Ms. Anderson accused Murray Forman of improper conduct related to FLTCI."

- To Fulchino "and Murray Forman, the President of FLTCH, FAS' sole member," that "falsely accused Ms. Anderson of wrongdoing and disloyalty to FAS and FLTCH."

(Am. Counterclaim ¶¶ 277-80.)

In Maryland, one alleging defamation must show *inter alia* "that the statement was one which appears on its face to be defamatory, as, *e.g.*, a statement that one is a thief, or the explicit extrinsic facts and innuendo which make the statement defamatory." *Metromedia, Inc. v. Hillman*, 400 A.2d 1117, 1123 (Md. 1979). Anderson's allegations do not support an inference that the above-quoted statements are defamatory on their face, *i.e.*, defamation *per se*. *See Independent Newspapers, Inc. v. Brodie*, 966 A.2d 432, 441 (Md. 2009) (retaining common law distinction between defamation *per se* and defamation *per quod*). Nor has Anderson pleaded sufficient extrinsic facts to infer that Zack's statements constituted defamation *per quod*. In reality, the allegations are too vague to draw a reasonable inference that Anderson was defamed by them—a defamatory statement being defined in part as one "tending to expose the plaintiff to public scorn, hatred, contempt, or ridicule [and made] to a third person who reasonably recognized the statement as being defamatory." *Bagwell*, 665 A.2d at 317 (citations omitted). She has not pleaded that the recipients of these statements could have or should have recognized them as being defamatory. It is clear from her allegations that Anderson and Zack did not get along well and that Anderson herself made unflattering reports to Fulchino about Zack. (Am. Counter-complaint ¶¶ 31-35.) Further, Anderson was warned "on numerous occasions" by Fulchino and "outside counsel that if she continued to take positions adverse to defendant Zack's positions in connection with ongoing legal matters that affected the company, . . . Ms. Anderson would be the one to be terminated, not Ms. Zack." (*Id.* ¶ 38.)

Even if the alleged statements were made, were false, and were recognizable as defamatory by their recipients, which Movants do not concede, Zack argues she had a common

law qualified privilege to make them.  Under Maryland law, "[a] qualified privilege may arise where the speaker and the recipient have a 'common interest in the subject matter,' including 'interests in property, business and professional dealings.'"  *Hanrahan v. Kelly*, 305 A.2d 151, 155-56 (Md. 1973).  Clearly, Zack and the recipients of her statements had a common interest in Anderson's work at FAS.

The qualified privilege may be overcome under any of three exceptions.  "A qualified privilege may be overcome only if the plaintiff can prove either that the defendant acted with constitutional malice, that the statement was not made in furtherance of the reason for the privilege, or was communicated to a third person who is outside the protection of the privilege."  *Bagwell*, 665 A.2d at 318.  The statements at issue were obviously made in furtherance of the reason for the privilege and were not communicated to a third person outside the privilege's protection.  Constitutional malice is "defined as a knowing falsity or a reckless disregard for the truth."  *Metromedia*, 400 A.2d at 1120.  Anderson has alleged that Zack knew that her first statement was false when she made it.  (Am. Counter-complaint ¶ 278.)  She did not make a similar allegation as to the second and third statement, but the Court will, for the sake of argument, presume that she alleged the same as to the second and third statements and that she has, just barely, alleged enough to defeat the privilege.  *See* Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

Regardless, defamation *per quod* requires the pleading and proof of special damage suffered in consequence of the publication.  *M & S Furniture Sales Co. v. Edward J. De Bartolo Corp.*, 241 A.2d 126, 129 (Md. 1968).  A general allegation that the statements caused the loss of an unspecified sum of money, or that a plaintiff's "practice or business has declined, is not a sufficiently precise allegation of special damage."  *De Witt v. Scarlett*, 77 A. 271 (Md. 1910).  Thus, in *De Witt*, the plaintiff's claiming that a publication destroyed his credit "'so that the

plaintiff . . . is seriously injured in his business, and has suffered and will suffer heavy loss and damage in the prosecution thereof,'" was only an allegation of "such damages as may be recovered where the matter published is libelous *per se*." *Id.* (quoting De Witt's complaint).

Anderson's complaint does not plead special damage. She alleges that Zack's statements "caused her substantial harm[,] . . . led to her termination by defendant FAS and caused Ms. Anderson great reputational and economic injury." (Am. Counter-complaint ¶¶ 283-84.) The only part of this damage allegation that possibly can be interpreted as pleading special damage is that the statements "led to her termination." However, Anderson has alleged elsewhere that she was told "numerous times" that if it came down to a choice between Anderson and Zack, Anderson would be the one terminated. (*Id.* ¶ 38.) Moreover, she alleges that at the time of her termination, she was told by Fulchino that her position was being eliminated to reduce costs in light of FAS's divesting itself of a significant part of its portfolio. (*Id.* ¶¶ 100-01.) Thus, she has not pleaded plausibly that her termination was the consequence of Zack's statements.

### J.  Count X – Defamation against Fulchino

The preceding analysis of the insufficiency of Anderson's defamation claim against Zack applies with equal force to this last count of defamation against Fulchino. Anderson alleges that the same day her employment was terminated, "Fulchino asserted to staff in the Legal Department who previously reported to and respected Ms. Anderson that Ms. Anderson had 'personal problems at home,' that she was 'not responsive lately' and that 'she thought she was untouchable.'" (*Id.* ¶ 286.) Her claimed damage from these statements, which plainly are not defamation *per se*, was that they "caused her substantial harm and were intended to injure her reputation and discourage others from having a good opinion of, or associating with, Ms. Anderson." (*Id.* ¶ 289.) To the extent she might be able to overcome all of the other hurdles with this claim, she has clearly failed to plead special damage.

15

### IV.  Conclusion

Anderson has meritoriously challenged Count III of FAS's second amended complaint. Her other arguments in support of her motion to dismiss the complaint are without merit.  As to her counterclaim and third-party complaint, Anderson's only viable count is her breach-of-contract claim against FAS.  However, its inclusion of a demand for punitive damages is improper, and that portion of the claim will be dismissed.  All of her other counts fail to state a claim for relief and will be dismissed.

A separate order will follow.

DATED this 6th day of November, 2014.

BY THE COURT:

_____/s/_____
James K. Bredar
United States District Judge