IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

*

FUNDAMENTAL ADMIN. SERVS., LLC,    *

    Plaintiff                     *

    v.                          *            CIVIL NO. JKB-13-1708

KRISTI ANDERSON,              *

    Defendant             *

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM AND ORDER

### I. Background

This case arose from Plaintiff Fundamental Administrative Services ("FAS"), LLC's concern that Defendant Kristi Anderson, former general counsel of FAS, was going to violate her ethical and fiduciary obligations not to disclose FAS's privileged and confidential information acquired by her during the course of her employment with FAS. (Compl., ECF No. 1; Mot. Temporary Restraining Order ("TRO") and Preliminary Injunction, ECF No. 2.) The Court granted a TRO (ECF No. 5), but later dissolved it and denied preliminary injunctive relief because it believed FAS's concerns focused upon proceedings in the bankruptcy court of the Middle District of Florida and because the Court concluded that determinations of privilege and confidentiality could and would be properly addressed in that court (Order 6/14/2013, ECF No. 13).

Roughly three months later, FAS came back to the Court with another motion for a TRO and a preliminary injunction, asserting a fresh violation of Anderson's duties to FAS based upon her filing a complaint against FAS in Maryland state court, which revealed much privileged and

confidential information. (ECF No. 28.) The Court granted the TRO and, after a hearing, entered a preliminary injunction. (ECF Nos. 32, 41.) One of the provisions of the injunction mandated the following:

> Defendant SHALL RETURN to FAS any document, whether in electronic or paper form, that Defendant obtained through her employment and representation of FAS and that is in her or her counsel's possession, custody, or control, EXCEPT FOR any document that pertains to Defendant's compensation or other benefit while employed with FAS.

(10/10/2013 Prelim. Inj. 4, ¶ 5.)

Shortly thereafter, Anderson filed a motion to alter or amend the preliminary injunction or, alternatively, for its clarification. (ECF No. 45.) Anderson did not, however, move for a stay of the injunction. In her motion brought pursuant to Federal Rule of Civil Procedure 59(e), Anderson asserted she was entitled to keep copies of all the documents in her possession because she had been FAS's in-house counsel, and she further asserted she was entitled to withhold certain unspecified documents on the basis of privilege and/or work product. She did not, concurrently with her limited production to FAS or with her Rule 59(e) motion, provide either to FAS or to the Court a privilege log that would permit determination of the legitimacy of her claim. Instead, she asserted she had a right to claim as her work product any FAS document that she had "culled" and retained in anticipation of litigation against FAS.

In three different productions in November and December 2013, Anderson provided 4,586 pages of documents to FAS, withholding an unspecified number of unidentified documents. (Pl.'s Mot. Order Show Cause 2.) In a "supplemental" Rule 59(e) motion, Anderson stated, "The only documents not otherwise in FAS' possession and control include her handwritten notes." (Def.'s Supp. Mot. Mem. 3, ECF No. 63.) Further, Anderson stated she "ha[d] in her possession . . . several copies of documents that she retained during the course of

2

her employment at FAS that she retained specifically in anticipation of potential future litigation with FAS." (*Id.* 2, ¶ 5.)  Briefing on Anderson's motions continued into March 2014 (ECF Nos. 55, 61, 63, 65, 66, 70, 71, 75, 78, 82, 83, 85), during which time FAS believed it had received at least copies of most of the documents in Anderson's possession (Pl.'s Mot. Order Show Cause 3).

But based on Anderson's sudden production on March 21, 2014, in the Florida bankruptcy proceeding of 31,000 additional pages, FAS filed its motion for an order to Anderson to show cause why she should not be held in contempt of the preliminary injunction (Mot. Order Show Cause 4-5), which the Court granted (ECF No. 122).  It was necessary to postpone the contempt hearing twice, with the Court convening for this purpose on March 26 and 27, 2015.

## II. Standard for Civil Contempt

A movant for civil contempt is required to establish by clear and convincing evidence the following four elements:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) ... that the decree was in the movant's "favor"; (3) ... that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) ... that [the] movant suffered harm as a result.

*In re Grand Jury Subpoena (T-112)*, 597 F.3d 189, 202 (4th Cir. 2010) (alterations in original).

Courts may impose sanctions for civil contempt "'to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy.'" *In re General Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995) (*GM Corp. I*) (*quoting Connolly v. J.T. Ventures*, 851 F.2d 930, 932 (7th Cir. 1988)).  Civil contempt remedies must have a compensatory or remedial purpose. *GM Corp. I*, 61 F.3d at 259.

Willfulness is not an element of contempt.  Innocent or good faith noncompliance meets the third element.  *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949); *McLean v. Central States, Southeast and Southwest Areas Pension Fund*, 762 F.2d 1204, 1210 (4th Cir. 1985); *Brinn v. Tidewater Transp. Dist. Comm'n*, 113 F. Supp. 2d 935, 940 (E.D. Va. 2000), *aff'd*, 242 F.3d 227 (4th Cir. 2001).

If the movant carries its burden of proof as to the four elements of civil contempt, then its burden of proof as to damages is by the preponderance of the evidence.  *In re General Motors Corp.*, 110 F.3d 1003, 1018 (4th Cir. 1997) (*GM Corp. II*).  Also, the movant need not prove that its damages were solely caused by the behavior constituting contempt.  "It is a common principle of tort law that where more than one action or party each was a contributing cause of subsequent damage, liability may be imposed on the wrongdoer if the intervening acts or final result were foreseeable to the wrongdoer."  *Id.* (citing *Westfarm Associates Ltd. Partnership v. Washington Suburban Sanitary Comm'n*, 66 F.3d 669, 687-88 (4th Cir. 1995) (interpreting Maryland law)).

Attorney's fees and litigation costs can be damages.  *See GM Corp. I*, 61 F.3d at 259. Therefore, if FAS makes its case on the elements of contempt, then FAS's attorney's fees and litigation costs *other than* as to the instant motion and its related proceedings may be awardable as damages.  But the attorney's fees incurred in litigating the issue of contempt cannot be awarded unless (1) the court finds the contempt amounted to willful disobedience and (2) the fees and costs claimed were "reasonably and necessarily incurred in the attempt to enforce compliance."  *Wagner v. Bd. of Ed. of Montgomery Cnty.*, 340 F. Supp. 2d 603, 620 (D. Md. 2004).  "'A contemnor's refusal to comply with a court order must rise to the level of obstinacy, obduracy or recalcitrance to satisfy the "willful disobedience" standard enunciated by the Supreme Court in *Alyeska* and *Fleischmann*.'"  *Id.* (citations omitted) (referring to *Alyeska*

4

*Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240, 258 (1975), and *Fleischmann Distilling Corp. v. Maier Brewing Co.*, 386 U.S. 714, 718 (1967)).

### III. Analysis

At the hearing, the Court received testimony and exhibits, and it heard argument from counsel for FAS, counsel for Anderson, and counsel for Steven N. Leitess, Esq., former counsel to Anderson. During the hearing, the Court concluded that Mr. Leitess and his firm, Leitess Friedberg, P.C., were not in contempt of the preliminary injunction. That conclusion was a close call.

Mr. Leitess, who was serving as Anderson's counsel when the preliminary injunction was issued, was subject to its command to return to FAS any documents in his possession, custody, or control. He testified, though, he satisfied himself that the documents Anderson was producing to FAS were the same as the documents in his possession, and after being so satisfied, he destroyed the documents in his possession. The Court appreciates that technology can present challenges in document production, but Mr. Leitess's decision, although seemingly pragmatic, prevents FAS from knowing with certainty that the destroyed documents were in fact duplicates. The better course of action would have been to follow strictly the dictates of the injunction and provide all of the documents to FAS even if it meant providing duplicates; after doing so, a consultation with FAS on the technical aspects of the destruction of the documents in Mr. Leitess's files would have been in order before destroying them.

Also, Mr. Leitess testified he did not know the additional 31,000 pages of documents existed until mid-March 2014 when Anderson called him to say she had found them. Her lack of compliance as to those documents, to be addressed *infra*, was not shown to be attributable to him. Applying the standards for judging contempt, the Court concludes that FAS has not proven

by clear and convincing evidence that Mr. Leitess violated the provision in the preliminary injunction cited by FAS in its motion for order to show cause.

In contrast, the Court concludes that FAS has met its burden of showing Anderson's noncompliance with the preliminary injunction and its lesser burden of quantifying damages. The existence of the court order—the preliminary injunction—and Anderson's knowledge of the order are undisputed. She has disputed that she knew she was violating the injunction as well as whether FAS sustained any compensable damage. As stated at the hearing, FAS's complaint of noncompliance was based upon three intertwined events: (1) Anderson's tardy return of the 31,000 pages (the "thumb-drive documents"); (2) her return of documents but retention of copies, as well as her withholding of documents on privilege and work-product theories without provision of a privilege log, despite FAS's request for one; and (3) her assertion of work product protection for the entire 31,000 pages produced precipitously in Florida while contending they could not be used to satisfy the Maryland preliminary injunction. The 31,000 pages resided on a USB thumb-drive that Anderson said she unexpectedly found in mid-March 2014 in her home office.

Preliminarily, the Court reiterates Anderson did not move to stay the injunction. Federal Rule of Civil Procedure 62(a) states, "[U]nless the court orders otherwise, the following are not stayed after being entered, even if an appeal is taken: (1) an interlocutory or final judgment in an action for an injunction . . . ." Instead, she filed a motion to alter or amend judgment under Rule 59(e) (and later filed a supplemental motion to amend). (ECF Nos. 45, 63.) The court has discretion to stay an injunction pending disposition of a Rule 59(e) motion, *see* Fed. R. Civ. P. 62(b)(3), but Anderson never asked for that form of relief. Thus, Anderson was not relieved of her responsibility to comply with the injunction.

As for the tardy return of the 31,000 pages, FAS's first stated ground of contempt, the circumstances surrounding Anderson's finding the thumb-drive in her home office clearly establish that she had the requisite knowledge of their location. She testified she searched her home office in the Fall of 2013, after issuance of the preliminary injunction, for documents responsive to the mandate. She also testified that it was common in her work as FAS general counsel to use multiple thumb-drives to carry documents when she traveled on business. The thumb-drive in question, unlike others she shared with other FAS personnel, was used by her alone. Anderson conceded that the only way in which the thumb-drive would have existed in her home was for her to have brought it home with her. No one else would have brought it to her home and put it in her home office. She said that it apparently fell into a box of personal effects in her home office where she had various boxes of FAS items as well as boxes of personal effects. In the Fall of 2013, she only looked in the FAS boxes for documents. It was only when she was cleaning and organizing her home office in preparation for starting a new career that she looked in the box of personal effects and found the thumb-drive. This was at the same time that she was making a more in-depth search of her home office for documents responsive to the Florida bankruptcy court's order of production.

The case of *United States v. Darwin Constr. Co., Inc.*, 873 F.2d 750 (4th Cir. 1989), provides guidance for resolution of the issue of Anderson's lack of compliance with a court order. There, a corporation ordered to produce documents responsive to an Internal Revenue Service summons, and ultimately a court order, belatedly did so. Darwin made one production and then made another production after a more thorough search. *Id.* at 752. The district court concluded that Darwin had not taken all reasonable steps to comply with the order, and the Fourth Circuit agreed. *Id.* at 755. The successful second search proved that the documents

produced in the second batch "'were locatable with some effort'"; Darwin "'was required to make that effort.'" *Id.* at 753 (quoting district court's order finding Darwin in contempt). The thumb-drive was locatable in Anderson's home office with some effort. She was required to make that effort. Her failure to do so constituted noncompliance with the preliminary injunction.

Regarding the second stated ground for contempt, the retention of copies and the withholding of documents without provision of a privilege log, the Court also finds Anderson's engaging in those acts amounted to contempt. The injunction's mandate required her to return "any document" and did not direct or allow her to retain copies. Her retention of copies of FAS documents, in the absence of a stay, was done at her peril and constitutes contempt of the injunction. Equally so, the withholding of unidentified documents on the basis of privilege and work product without concurrent provision to FAS of a privilege log also amounts to contempt. Tellingly, Anderson's reply on her supplemental motion to amend asserted,

> It is commonplace for a Court to issue an Order regarding the production of documents without specifically excepting documents subject to protection based on the attorney/client privilege, work product protection or some other recognized privilege. Generally, existing recognized privileges operate as the backdrop of any order requiring production.

(Def.'s Reply 2, ECF No. 71.)

This Court agrees that "[g]enerally, existing recognized privileges operate as the backdrop of any order requiring production." Of course, the injunction did not require Anderson to *produce* documents but to *return* documents she was not entitled to possess after being discharged by FAS. Nonetheless, even accepting her analogy, it is also commonplace for a party who is required to produce documents to provide a privilege log identifying which documents the party seeks to withhold from production. But Anderson did not follow that commonplace procedure and refused to provide a privilege log until after the Court issued a supplemental order

8

May 1, 2014 (ECF No. 97), ordering her to provide a privilege log within ten days of the Court's order. The Court would be faced with materially different circumstances if she had followed the usual procedure of providing a privilege log to FAS in the Fall of 2013. The argument in front of the Court would then have been about whether specific documents may legitimately be withheld and not returned. Anderson's failure to provide any privilege log while withholding unidentified documents constitutes contempt of the injunction.

The third ground for contempt was stated by FAS as Anderson's assertion that all 31,000 pages of the thumb-drive documents were her work product. Her assertion defies rationality. This is analyzed at greater length in the Court's May 1, 2014, order (ECF No. 97), but it is sufficient to say here that her claiming that FAS documents—which were not created by Anderson and were taken by Anderson without FAS's blessing—were *her* work product for litigation she anticipated having against FAS is utterly without merit; indeed, the Court deems her argument on this point to have been asserted without a good-faith basis.

Furthermore, Anderson's testimony at the hearing was not entirely consistent with her filings in this case. Throughout the litigation following the entry of the preliminary injunction, Anderson contended she selected and retained the documents in her (former) possession out of the universe of FAS documents and did so in anticipation of her litigation against FAS, and she, in effect, argued those documents were transformed into her work product when she took them. (*See* Def.'s Supp. Mot. Amend 2-3, ECF No. 63; Def.'s Supp. Mot. Amend. Mem. 3, 10-11, ECF No. 63-2; Def.'s Reply 12, ECF No. 71.) Yet, at the hearing, even though she acknowledged she had asserted work-product protection over the thumb-drive documents produced in Florida, she testified she intended to leave the thumb-drive at FAS when she was terminated. This inconsistency highlights the implausibility of her claim to work-product protection for FAS

9

documents. If she intended *not* to take the documents when she left FAS, then her argument that they were really *her* work product when she unexpectedly found them is even more preposterous than her original argument, especially when she admitted on the witness stand that she did not review the thumb-drive documents for work-product status.

On these multiple grounds, the Court finds by clear and convincing evidence that Anderson knowingly violated the injunction's mandate that she return "any document" to FAS. Further, the Court received clear and convincing evidence at the hearing to show that FAS was damaged when additional litigation was necessitated by Anderson's failure to return the documents. Thus, the four elements of civil contempt have been established. However, the Court finds that the record evidence does not clearly and convincingly show willful disobedience by Anderson. Consequently, FAS's attorney's fees and costs of litigating the issue of contempt are not awardable. The Court now addresses the specific items of damage claimed by FAS.

The largest single item of damages claimed is FAS's legal work in relation to Anderson's two Rule 59(e) motions. This legal work would have been unnecessary had Anderson complied with the injunction. Anderson's own acknowledgement of the well-understood role of privilege and work-product claims in document production undercuts her refusal to provide a privilege log. As earlier noted, this would be a different case as to contempt had she taken this step. Any litigation resulting from a timely privilege log would have been narrowly focused, unlike the wide-ranging motions actually filed. The amount billed to FAS by its counsel on these two motions was $22,427, and the Court finds that this amount was reasonable and necessary. The Court notes that, during the hearing, it indicated it was considering reducing that amount based upon the Court's May 1, 2014, order requiring Anderson to provide a privilege log. However,

after reflection, Anderson's belated privilege log does not merit mitigation of any part of the amount claimed on the Rule 59(e) motions. The full amount will be allowed.

Also claimed by FAS as an item of damages was FAS's opposition in the Florida bankruptcy court to the trustee's motion to overrule privilege objections and compel production by Anderson of FAS documents. Had Anderson timely returned FAS's documents in accordance with the preliminary injunction, she would have had no documents in her possession to produce in Florida. She brought that possibility to the Florida bankruptcy court's attention when she stated in her response to the motion, "A substantial amount of the documents directly relate to the matters before this Court. If the U.S. District Court [for the District of Maryland] compels Ms. Anderson to surrender all documents that she selected for her defense and her claims, this Court's efforts to facilitate complete discovery will be defeated." (Pl.'s Ex. 26.) The Court infers she was urging the Florida bankruptcy court to require production of documents from her before this Court reached the merits of her Rule 59(e) motions, which had no legal effect on her duty to comply with the preliminary injunction. FAS spent $2,300 in opposing this motion and the Court concludes the amount spent was reasonable and necessary.

Next, FAS spent $237 for communications with its outside counsel about the issue of Anderson's retention of documents in violation of the preliminary injunction. The Court finds this charge was reasonable and necessary.

Further, FAS spent $1,655 for its communications back and forth with Maryland outside counsel after the surprise production of the thumb-drive documents March 21, 2014. Also, FAS filed an emergency motion for continuance of the Florida bankruptcy court's planned March 28 *in camera* examination of the documents produced by Anderson, given the unexpectedly voluminous production and the need to review each one for potential objections; FAS spent

$1,268 for Florida outside counsel and $775 for Maryland outside counsel in connection with this motion. The Court finds these charges were reasonable and necessary.

Finally, FAS claimed $500 for counsel's review of the certificates of compliance filed by Anderson and Stacey Moffet, Esq. (Anderson's counsel) and eventually filed by Steven N. Leitess, Esq. (Anderson's former counsel). The certificates from Anderson and Ms. Moffet were not ordered by the Court. The one filed by Mr. Leitess was required by the May 1, 2014, order. The Court does not consider this charge to be necessitated by Anderson's noncompliance with the preliminary injunction.

In sum, the Court finds FAS sustained $28,662 in damages flowing from Anderson's contempt. The evidence presented at the hearing shows that the amounts billed to FAS by outside counsel were reasonable.

## IV. Conclusion

The Court finds by clear and convincing evidence that Defendant Kristi Anderson's failure to comply with the preliminary injunction (ECF No. 41) constituted contempt of this Court's order. Further, the Court finds FAS was damaged by Anderson's contempt in the amount of $28,662. Accordingly, IT IS HEREBY ORDERED, Anderson SHALL FORTHWITH REMIT $28,662.00 to FAS's outside counsel, Linda S. Woolf, Esq., Goodell DeVries Leech and Dann LLP, One South Street, 20th Floor, Baltimore, Maryland 21202.

DATED this ___/___ day of April, 2015.

BY THE COURT:

James K. Bredar
United States District Judge

12